NATIONAL SUPER SPUDS, INC., Plaintiff,

v.

NEW YORK MERCANTILE EXCHANGE et al., Defendants.

William R. BUSTER, Jr., Plaintiff,

v.

Jack Richard SIMPLOT et al., Defendants.

William R. BUSTER, Jr., Plaintiff,

v.

NEW YORK MERCANTILE EXCHANGE et al., Defendants.

Willard C. SHINER et al., Plaintiffs,

v.

NEW YORK MERCANTILE EXCHANGE et al., Defendants.

Nos. 76 Civ. 2375 (LFM), 76 Civ. 2554 (LFM), 76 Civ. 2571 (LFM) and 76 Civ. 2594 (LFM).

United States District Court, S. D. New York.

June 15, 1977.

---

Pomerantz, Levy, Haudek & Block, New York City, for plaintiffs by Richard M. Meyer, New York City.

Sidley & Austin, Chicago, Ill., and Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendant Heinold Commodities, Inc. by Stuart S. Ball, Chicago, Ill., and John E. F. Wood, New York City.

## OPINION

MacMAHON, District Judge.

Plaintiffs in these putative class actions move to dismiss the counterclaims asserted against class members by defendant Heinold Commodities, Inc. We deny the motion.

Plaintiffs purport to represent all those persons who held net "long" positions in May 1976 Maine potato futures contracts ("the May contracts")[1] and who liquidated those positions between April 13, 1976 and May 7, 1976 (the last day of trading in the May contracts). Defendants are (a) sellers of "short" positions in the May contracts,[2] (b) brokers (including Heinold) who conducted trading in the May contracts on behalf of the short seller-defendants, and (c) the New York Mercantile Exchange ("the Exchange"), the designated contract market for the May contracts.[3]

---

1. Persons holding "long" positions in the contracts agreed to purchase, at the contract price, 50,000 pounds of potatoes per contract, deliverable on or before May 25, 1976. Speculators who did not intend to accept actual delivery of the potatoes could "liquidate" their long positions by selling an equivalent number of contracts on or before the close of trading on May 7, 1976.

2. Persons who sold "short" the May contracts were obligated to deliver actual potatoes on or before May 25, 1976, unless they "covered" or liquidated their short positions by buying an equivalent number of long contracts on or before May 7, 1976.

3. Section 5 of the Commodity Exchange Act, 7 U.S.C. § 7.

The complaint alleges that the seller-defendants, in concert with the broker-defendants and others, engaged in manipulative acts designed to depress artificially the trading price of May contracts during the relevant period, and that the broker-defendants and the Exchange knew or should have known of the alleged manipulations and yet acquiesced in, failed to report, and concealed those acts.

Briefly, it is claimed that the seller-defendants, in concert with Heinold and others, violated §§ 4b and 9 of the Commodity Exchange Act [4] and § 1 of the Sherman Act [5] by conspiring to continue selling short the May contracts at any price when they had no intention or capability of making delivery, and by failing or refusing to place liquidating "buy" orders prior to the close of trading on May 7, 1976.[6] Plaintiffs claim they were damaged when they liquidated, i. e., sold, their long positions at the manipulated low trading price during the relevant period.

Heinold's counterclaims assert that various alleged members of the plaintiff class engaged in a counter-conspiracy designed to "squeeze" both the futures and cash market (for actual potatoes to be delivered under the contracts) in a successful effort to force large-scale defaults by short sellers of the contracts. While some of the counterclaim defendants are identified by name and some are not, none is a named plaintiff or representative party in any of these actions.[7] Accordingly, they may all be considered "absent" class members.

Under Rule 13 of the Federal Rules of Civil Procedure,[8] a counterclaim may be asserted only against any "opposing party." The question here, then, is: Are absent class members, whether or not specified by name, "opposing parties" within the meaning of Rule 13? We hold that they are in the context of this case. Counsel have not cited, nor have we found, any decision of an appellate court on the question, but district courts have ruled on the question and have taken varied approaches to the problem.

The case most strongly in favor of dismissing counterclaims against absent class members is *Donson Stores, Inc. v. American Bakeries Co.*, 58 F.R.D. 485 (S.D.N.Y.1973). Noting the paucity of authority on the question, the court in *Donson Stores* said: "[I]n the absence of any reported decision holding that absent class members are parties for purposes of Rule 13, I hold that they are not." *Id.* at 489. Significantly, however, the court also concluded that no prejudice would result from the decision, since the court intended to try the issue of defendants' liability first, and if liability were established the court would consider other issues, "including damages and counterclaims," on a class member-by class member basis. *Id.* at 489–90.

Following that first tentative treatment of the problem, other cases adopted a similar approach. See, e. g., *Weit v. Continental Illinois Nat'l Bank & Trust Co.*, 60 F.R.D. 5 (N.D.Ill.1973); *In re Sugar Antitrust Litigation*, 22 Fed.Rules Serv.2d 634 (E.D.Pa.1976).

---

**4.** 7 U.S.C. §§ 6b and 13.

**5.** 15 U.S.C. § 1.

**6.** See n. 2, *supra.*

**7.** We note that the counterclaims are asserted against class members as individuals, not as a class, and that, therefore, the requirements of Rule 23 need not be established.

**8.** Rule 13(a) and (b), Fed.R.Civ.P., provides: "(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim

and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

"(b) Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

In *Rollins v. Sears, Roebuck & Co.*, 21 Fed.Rules Serv.2d 1088 (E.D.La.1976), the court construed *Donson Stores* to preclude only those counterclaims against *unspecified* class members and held that counterclaims are not barred, provided they are directed only against class members identified by name. The court in *Rollins* also noted that its decision "prevents emasculation of the class action device by defendants filing a blizzard of counterclaims since class members who have counterclaims filed against them may be excluded if necessary. . . ." The latter approach may also be appropriate in these cases.

Numerous other cases, on the other hand, while not addressing the precise question, have intimated an opposite conclusion about the propriety of counterclaims against class members. See, *e. g., Cotchett v. Avis Rent A Car Sys., Inc.*, 56 F.R.D. 549 (S.D.N.Y. 1972); *Berkman v. Sinclair Oil Corp.*, 59 F.R.D. 602 (N.D.Ill.1973); *Rodriguez v. Family Publications Serv., Inc.*, 57 F.R.D. 189 (C.D.Cal.1972). In those cases, however, the courts, in considering class action certification under Rule 23, *assumed* in the context of the particular facts presented that proper counterclaims, actual or potential, existed against absent class members and, therefore, concluded that class action status was inappropriate. In at least one case, however, *Aamco Automatic Transmissions, Inc. v. Tayloe*, 67 F.R.D. 440 (E.D.Pa. 1975), class action status was granted despite numerous potential counterclaims against class members. While those counterclaims had not been filed, the court suggested that it would follow the *Donson Stores* method, handling compulsory counterclaims when and if defendants' liability were established. Furthermore, the court noted that any compulsory *or* permissive counterclaims could be tried separately under the guidelines of Rule 42(b).

We think there is less to this debate than meets the eye. Even those cases squarely holding that absent class members are not "opposing parties" indicated that such counterclaims *would* be considered at a later stage of the litigation, *i. e.*, in the event liability is established on the primary complaint. *Donson Stores, supra; Weit, supra; In re Sugar Litigation, supra.* Fairly read, those rulings merely demonstrate a technique for managing and organizing, for trial purposes, complex cases with numerous claims and counterclaims. The cases denying class action certification, in part because they were potential or actual counterclaims against class members, reflect a similar concern about managing those cases where a myriad of individual issues indicated that class action treatment was inappropriate.

In our view, the Federal Rules of Civil Procedure afford a range of procedures which give us ample control over the conduct of these proceedings to accomplish directly, by appropriate order, the same result obtained by the indirect method of dismissing counterclaims against class members, only to allow their reassertion later.

Rule 42(a), for example, explicitly authorizes the court to consolidate for trial purposes any or all common issues in related cases, "and it may make such order concerning the proceedings therein as may tend to avoid unnecessary costs or delay." Similarly, Rule 42(b) authorizes the court to order separate trials of any claims, "in the furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."

Almost at the threshold of this litigation, we will consider under Rule 23(b) the existence of counterclaims, actual or potential, as a factor in deciding whether certification of these cases as class actions is appropriate.

Rule 23(c) provides that class members are to be notified of the pendency of a class action, and they may exclude themselves from the class, as the court directs. We note in this connection that even in cases which dismissed counterclaims against class members, the courts felt that notification to the class should include reference to the counterclaims, since "[t]he notice should contain appropriate mention of the entire scope of the case." *Donson Stores, supra,*

58 F.R.D. at 490. Plainly, the existence of a counterclaim should be included in the notice as a factor for class members to consider in determining whether or not to exclude themselves from the class.

Rule 23(c)(4) provides that actions may be maintained as class actions with respect to particular issues, and the class may be divided into subclasses. Such an approach may be appropriate here.

Under Rule 23(d), the court may make appropriate order "determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument . . . ." Rule 23(d) also provides that such orders may be combined with an order under Rule 16 (relating to pre-trial procedure and formulating issues), and that orders "may be altered or amended as may be desirable from time to time."

■ Finally, if we were to dismiss Heinold's counterclaims now and Heinold asserted them in one of the other lawsuits now pending before us or in a new action, those related claims would be assigned to us under Calendar Rule 13 of this court. We would again have the claims before us and would still have to consider their treatment in conjunction with the other claims already asserted, for pre-trial and possibly trial purposes. It also appears that some issues raised by Heinold's counterclaims may be raised as affirmative defenses.

Accordingly, this is a particularly apt case for exercising our discretion under Rule 42 to consolidate or sever the various issues, in the interest of convenience and manageability and judicial economy. In spite of plaintiffs' contention that Heinold's counterclaims will only add to the "procedural morass" (this suggestion may already be too late), we feel that dismissal and later resurrection of these claims, whether in this action or yet another, would complicate matters even further and would be to no practical avail.

We have also concluded, as did the court in *Donson Stores*, that no prejudice will result from our decision to allow these counterclaims to stand. Plaintiffs are concerned, no doubt, that the number and complexity of additional issues in these actions may jeopardize their forthcoming motion for class action certification. While this is a legitimate concern, we feel that if plaintiffs are able to establish the requirements for certification of their primary claims (or any of them) as class actions, Rules 23 and 42 afford us ample flexibility to treat proper class action questions as such, leaving subsidiary and related claims to be dealt with in such manner as we, in our discretion, deem appropriate after further clarification and definition of the issues and parties in these and the other related actions.

There is also the danger that wholesale assertion of counterclaims is subject to tactical abuse tending to "emasculate" the class action device. See *Rollins* and *Donson Stores, supra*. We note, first, that *Rollins* minimized this danger by indicating that class members who have counterclaims filed against them could be excluded, and the same method would be available to us. Second, many of those cases dismissing counterclaims or denying class action certification, in part because of counterclaims against class members, were Truth-in-Lending cases or antitrust cases involving thousands or millions of class members, many of whom had delinquent accounts or other liabilities subject to counterclaim. See, e. g., *Cotchett, Berkman, Rodriguez* and *Weit, supra*; see also *Dennis v. Saks & Co.*, 20 Fed.Rules Serv.2d 994 (S.D.N.Y.1975); *Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir. 1974). Those cases are inapposite here, where Heinold has counterclaimed against eight named members of the putative class and others as yet unnamed. While the total number of counterclaim defendants is unknown, there is no indication that it will approach the proportions involved in those cases cited above. Furthermore, we retain continuing control over the conduct of these actions and can alter or amend any orders relating to the litigation, if later events make it appropriate.

Third, we note that even those cases dismissing counterclaims provided that class members should be notified of the potential

counterclaims the court would be considering at the claim-filing state. See, e. g., *Donson Stores, supra; In re Sugar Litigation, supra.* We fail to see what practical difference was achieved in those cases, since the effect would be the same on class members deciding whether or not to remain in the actions.

In short, we are not convinced by those cases holding that absent class members are not "opposing parties" subject to counterclaim, and we feel that this is an appropriate case for retaining jurisdiction over such counterclaims, subject to our authority under the Federal Rules to determine, at the appropriate time, the proper place for the counterclaims in any trial or trials arising out of these numerous actions.

While it is true that the class action device allows class members to sit back and await the outcome, by acquiescing in "the more galvanic parties becoming the active protagonists," *Korn v. Franchard,* 456 F.2d 1206, 1210 (2d Cir. 1972), it is equally true that class members agree to the prosecution of the action on their behalf, are bound by the resulting judgment, and are entitled to reap the benefits if the judgment is favorable. Furthermore, a rule that counterclaims may not be asserted against class members raises the danger that such a claim may never be asserted, if the claim in fact "arises out of the transaction or occurrence that is the subject matter" of a class member's claim and must, therefore, be asserted in the original action as a compulsory counterclaim under Rule 13(a). Since the rules provide sufficient flexibility to deal with such matters within the context of each case, we cannot agree with the wooden application of a rule that class members are never "opposing parties" for counterclaim purposes.

Accordingly, plaintiffs' motion to dismiss the counterclaims of defendant Heinold Commodities, Inc. is denied.

So ordered.