**In re BRISTOL BAY, ALASKA, SALMON FISHERY ANTITRUST LITIGATION.**

**Fred T. ANGASON et al., Plaintiffs,**

**v.**

**ALASKA PACKERS ASSOCIATION, INC., et al., Defendants.**

**MDL No. 249, No. C76–884–M.**

United States District Court,
W. D. Washington.

Jan. 6, 1978.

On Motion to Reconsider Class
Determination April 28, 1978.

Michael J. Frank, Matthew D. Jamin, Craig Tillery, Alaska Legal Services Corp., Anchorage, Alaska, Matthew P. Mitchell, Linus S. Masouredis, Jane S. Kumin, Feldman, Waldman & Kline, San Francisco, Cal., for plaintiffs.

George N. Hayes, Delaney, Wiles, Moore, Hayes & Reitman, Inc., Anchorage, Alaska, for defendants.

Peter D. Byrnes, Richard M. Clinton, Spencer Hall, Jr., Bogle & Gates, Seattle, Wash., for defendant New England Fish Co.

John E. Ederer, Nick S. Verwolf, Helsell, Fetterman, Martin, Todd & Hokanson, Seattle, Wash., for defendant Alaska Packers Association, Inc. and Queen Fisheries, Inc.

Douglas M. Fryer, Henry Haugen, Moriarty, Long, Mikkelborg & Broz, Seattle, Wash., for defendants Bumble Bee Seafoods, Castle & Cooke, Inc., Columbia Wards Fisheries, CWC Fisheries, Inc., Wards Cove Packing Company, Inc. and Red Salmon Packing Co.

Matthew R. Kenney, Lane, Powell, Moss & Miller, Seattle, Wash., for defendant Whitney-Fidalgo Seafoods, Inc.

Dexter A. Washburn, W. Brian Matsuyama, Jones, Grey & Bayley, Seattle, Wash., for defendant Nelbro Packing Co.

James D. Rolfe, R. Bruce Johnston, Graham & Dunn, Seattle, Wash., for defendants Peter Pan Seafoods, Inc., and Pacific Alaska Fisheries, Inc.

## OPINION AND ORDER CONCERNING CERTIFICATION OF A CLASS

FITZGERALD, District Judge.

Before this court is a motion by the named plaintiffs in the above-captioned action to maintain this private antitrust action on behalf of a class of commercial fishermen in the Bristol Bay, Alaska, salmon fishery. For the reasons to be stated, the requested class is certified and this action shall proceed as a class action pursuant to Fed.R.Civ.P. 23(b)(3).

## I. BACKGROUND

This action was originally filed in the District of Alaska. Pursuant to 28 U.S.C. § 1407, it was subsequently transferred to the Western District of Washington by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings with three related actions pending in that district, *In re Bristol Bay, Alaska Salmon Fishery Antitrust Litigation*, 424 F.Supp. 504, (Jud.Pan.Mult.Lit.1976).

The four named plaintiffs in this action are commercial fishermen in the Bristol Bay, Alaska, salmon fishery.[1] Each is a shareholder in the Bristol Bay Native Corporation (BBNC), a resident of Bristol Bay and a boat owner.

Defendants are twelve corporations or joint ventures that have purchased raw salmon in the Bristol Bay area, generally for processing in salmon canneries owned and operated by these defendants. Plaintiffs allege that the defendants have conspired in violation of the federal antitrust laws to restrain trade and eliminate competition in the purchase of salmon caught in the Bristol Bay area in order to lower the prices paid to fishermen for raw salmon. Plaintiffs claim that this conspiracy was furthered by a number of ancillary restraints designed to tie fishermen exclusively to a particular defendant, including but not limited to the following practices: a) providing financing for fishermen's boats on condition that those fishermen fish exclusively for the defendant which has financed each fishermen's boat; b) extending credit at company stores to fishermen on condition that those fisherman fish exclusively for the defendant that extended each fisherman credit; c) financing housing for fishermen on condition that those fishermen fish exclusively for the defendant which has financed each fisherman's housing; d) providing boat and engine repair services and docking facilities to fishermen on the condition that those fishermen fish exclusively for the defendant which has provided each fisherman those services; e) refusing to purchase fish from fishermen who have sold fish to floating canneries or freezerships; f) deceiving fishermen into believing that a "fish book" containing "fish tickets" which must be prepared in connection with each delivery of raw fish to a defendant can be obtained only from that defendant when, in fact, the book of fish tickets is a standard form prepared by the Alaska Department of Fish and Game and is available from that department without charge; and g) obtaining commercial fishing licenses for fishermen on the representation that a fisherman for whom a defendant has obtained a fishing license is obligated to fish exclusively for that defendant for the balance of that fishing season. Violations are alleged during the 1971, 1972, 1973 and 1974 fishing seasons. Plaintiffs contend that the exact amount of damage suffered by each fisherman is presently unknown, but that the damages can be easily calculated from the records of each fisherman's total catch. They assert that the price differential can be determined by comparing the price received in Bristol Bay during each of the four seasons with the price received in other relevant markets where greater competition existed, the prices received in Bristol Bay during periods of greater competition, and the profits earned by defendants upon resale of the Bristol Bay catch.

---

1. Fred T. Angason, Gust Bartman, Billy Bartman and Walt R. Johnson. Two other individuals have been dismissed as named plaintiffs at their own request—Donald F. Nielsen and William P. Johnson.

Defendants have filed counterclaims in which they allege that plaintiffs and others conspired unlawfully to raise the price that the canneries were required to pay for raw salmon in the Bristol Bay area. Defendants claim that the conspiracy was furthered by a variety of concerted activities, including boycotts, blockades, threats of violence and other forms of coercion.

Plaintiffs originally sought certification for a class consisting of all commercial fishermen in the Bristol Bay salmon fishery who have participated in commercial salmon fishing activities during the 1971, 1972, 1973 or 1974 seasons and who are not parties to other litigation with one or more of the defendants herein arising out of or related to such commercial salmon fishing activities. Certification of that class was denied because conflicts of interest between fishermen residing in Alaska and fishermen residing elsewhere rendered the named plaintiffs inadequate representatives of the entire class they sought to represent. *Donald F. Nielsen, et al. v. Alaska Packers Association, Inc., et al.*, No. A–75–69 (D.Alaska, November 10, 1976) (memorandum and order concerning certification as a class action). The opinion further concluded that the named plaintiffs, all of whom are resident fishermen, believe that the Bristol Bay fishery should be managed and controlled for the benefit of resident fishermen, and that these interests preclude fair and adequate representation of non-resident fishermen. In addition, the BBNC has acquired one of the defendants, Peter Pan Seafoods, and is presently operating a cannery in the Bristol Bay area. As was observed at that time:

> The fact that the named plaintiffs have a proprietary interest in one defendant cannery which is a present and future direct competitor of the other defendant canneries means their interests, with respect to a heavy damage judgment against other defendants as well as any equitable relief that would shape the future operation of the Bristol Bay fisheries, may diverge from the interests of fishermen who lack such a proprietary interest.

> These apparent conflicts of interest and antagonism between non-resident and resident fishermen, and between fishermen who have proprietary interests in a competing cannery and those who do not, are imminent and serious and relate to an issue that is at the heart of this litigation—the past, present and future operation of the Bristol Bay fishery.

*Id.* at 8.

Plaintiffs now seek to represent a more restrictive class, described as follows:

> All commercial fishermen in the Bristol Bay salmon fishery who have participated in commercial salmon fishing activities in an entrepreneurial capacity in Bristol Bay during the 1971, 1972, 1973 or 1974 seasons, who are not past or present parties to the other three actions included in this litigation or past parties to this action, and who are shareholders of Bristol Bay Native Corporation or residents of Alaska or both.

In the alternative, plaintiffs propose several smaller classes that are components of that class. The principal difference from the original class is that this class excludes all non-resident fishermen, unless they are shareholders of BBNC.

## II. CERTIFICATION OF CLASS

Plaintiffs seek certification of this class under both Rule 23(b)(2) and Rule 23(b)(3). While significant claims for declaratory and injunctive relief are involved in this action, the request for treble damages appears to be the primary focus. In such a situation, certification, if appropriate, should be under 23(b)(3) rather than 23(b)(2). *Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 564 (2nd Cir. 1968); 3B Moore, Federal Practice, ¶ 23.45 at 23–708–09 n.43 (2d ed. 1974). Accordingly, the proposed class in this case will be evaluated under the standards of Rule 23(b)(3). Those standards are, by now, well documented, and need not be set out here. *E. g., In re Sugar Industry Antitrust Litigation* 73 F.R.D. 322 (E.D.Penn.1976).

A.  The Class Is So Numerous That Joinder Of All Members Is Impracticable

■ There is little dispute among the parties that the class proposed is so numerous that joinder of all members is impracticable. Plaintiffs estimate membership in the class at over 2,000 persons, and on that basis it is found that the numerosity requirement is satisfied.

B.  Predominance Of Common Questions Of Fact

■ Defendants contend that individual factors predominate as to each fisherman. They stress that negotiations were conducted individually with each fisherman, and, in the event concerted activity among the defendants is established, that impact and damages would still have to be established individually, thereby rendering a class action improper and inefficient.

The plaintiffs' claims, however, allege group conduct by the defendants. The central and common element that plaintiffs must address will be the question whether the defendants acted in concert to depress the price paid for raw salmon. Examination of the steps allegedly taken by defendants toward that purpose, including the ancillary restraints that defendants allegedly employed, will be the significant common factors that must be pursued. It is true that in order for all the plaintiffs to recover it must be further shown that the effects of defendants' alleged anticompetitive behavior extended to each fisherman, but this facet does not overshadow the common class interest in proving the conspiracy alleged. *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 36–37 (S.D.N.Y.1977) *appeal dismissed*, 574 F.2d 656 (2nd Cir. 1978); No. 77–714, filed April 6, 1978; *In re Master Key Antitrust Litigation*, 70 F.R.D. 23, 26 (D.Conn.1975), *appeal dismissed*, 528 F.2d 5 (2d Cir. 1975).

It is not proper at this time to venture an opinion on whether proof of damages, in the event they become relevant, will be individual in nature or whether damages will be amenable to calculation by some generalized or formulary approach. Nor is it necessary to predict the form that proof of damages will eventually take in order to find that the common questions already visible may fairly be deemed predominant. At present, no conflicts among class members on the damages question are readily apparent. The potential that conflicts will later arise does not render certification of the class inappropriate. *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *accord, In re Sugar Industry Antitrust Litigation*, 559 F.2d 481, 484 (9th Cir. 1977).

The counterclaims asserted by the defendants pose no barrier to class certification. The primary counterclaims allege concerted activities on the part of fishermen to raise the price of raw salmon. As such, they will necessarily involve common questions concerning the actions of the fishermen and the effect of those actions on the defendants. In any event, since these counterclaims raise essentially different issues than the primary claims, they should be processed separately. The counterclaims that are essentially actions to collect monies due on debts are also distinct and will be processed separately. Discovery on all counterclaims will be stayed until such time as the court may deem it appropriate to process those claims. At that time, the court, through the procedures available under Rules 23 and 42, Fed.R.Civ.P., will have ample flexibility to consolidate or sever any issues in the interest of convenience, manageability and judicial economy. *National Super Spuds, Inc. v. New York Mercantile Exchange*, 75 F.R.D. 40 (S.D.N.Y.1977).

C.  Plaintiffs Are Adequate Representatives And Their Claims Are Typical Of Those Of The Class

■ The defendants challenge the ability of the plaintiffs to represent the proposed class because the representatives are uninformed. In particular, they maintain, three of the plaintiffs know relatively little about the facts of the case or the legal proceedings they are involved in, they have had minimal contact with the class attorneys

throughout these proceedings, and one of those plaintiffs does not speak English and can only communicate through an interpreter. Defendants also argue that the continued participation in this case of Alaska Legal Services Corporation as class counsel is questionable because the named plaintiffs are not eligible for legal assistance. In the event Alaska Legal Services is forced to withdraw as class counsel, defendants urge, the plaintiffs, who would then lack the resources, would be unable to continue representation of the class. Because of this possibility, defendants request the court to rule that the class lacks adequate representation.

The four named plaintiffs have a sufficient understanding of the reasons for which this case was instituted, and they are represented by able and experienced counsel who will adequately protect the interests of the class members. It is not necessary that named class representatives be knowledgeable, intelligent, or that they have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action. *Surowitz v. Hilton Hotels Corporation*, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966); *Fischer v. International Telephone and Telegraph Corporation*, 72 F.R.D. 170, 174 (E.D.N.Y. 1976); *Chevalier v. Baird Savings Association*, 72 F.R.D. 140, 146 (E.D.Penn.1976). Furthermore, the court will not review the decision of Alaska Legal Services to represent these plaintiffs and to serve as class counsel. The attorneys for the class have undertaken to pursue this action, and they represent that sufficient funds will be provided to finance the costs, including the cost of class notice. On this basis, it is found that the plaintiffs are adequate class representatives.

Defendants also challenge the ability of the plaintiffs to represent the proposed class on the grounds that the claims of the plaintiffs are not typical of the claims of all class members. They assert that severe antagonisms and conflicts of interest within the proposed class make certification inappropriate. Many of the po-

tential conflicts asserted by defendants, however, relate to ancillary matters and not directly to the subject matter in controversy—the question whether defendants conspired unlawfully to depress the price paid for raw fish. Therefore, these conflicts are not relevant to the consideration of class certification. *Sperry Rand Corporation v. Larson*, 554 F.2d 868, 874 (8th Cir. 1977). Other asserted conflicts amount to disagreements among a relatively small number of named individuals. For example, defendants contend that certain leaders within the Bristol Bay community have declined to become involved in this lawsuit and may oppose the suit. These individual conflicts do not appear to be widespread among the class, and can be reduced by certain class members opting out of the class. Fed.R. Civ.P. 23(c)(2)(A); *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977). Finally, defendants assert that conflicting views among different groups of Alaska residents concerning utilization and development of the Bristol Bay fishery and conflicts within BBNC concerning the propriety of maintaining this action in light of BBNC's acquisition of defendant Peter Pan destroy the unity of the class. The court is not convinced at this time that these conflicts are sufficiently severe, in relation to the matter in controversy, to make certification of the proposed class inappropriate. The court will exercise its continuing power under Rule 23(d) to review the class certification as the case progresses, and to alter or amend that certification or to order division of the class into appropriate subclasses under Rule 23(c)(4), allowing additional representative parties leave to intervene upon application to the court. Future changes in circumstances, if any, will be dealt with as they arise. *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975), *cert. denied*, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

D. A Class Action Is Manageable And Is Superior To Other Available Methods For The Fair And Efficient Adjudication Of The Controversy.

The foregoing objections of defendants combine into the proposition that a class

action is unmanageable and that it is not superior to other available methods for the adjudication of this controversy.

■■■ This action does not fall into that category of cases in which the issues are unduly complex, the number of members in the plaintiff class is so great, and the number and diversity of defendants is such that management of a class action would place exceptionally heavy burdens on the parties and the courts. *Cf. Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1974); *In re Hotel Telephone Charges*, 500 F.2d 86 (9th Cir. 1974). No undue problems in managing this class action are foreseen, and this court adopts the view of the Board of Editors of the *Manual For Complex Litigation*, Part I, § 1.43 n.72 (rev. ed. 1977) that "dismissals for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule."

It is also apparent that a class action is superior to other available methods for managing this controversy. Many of the members of this class are persons at or near the poverty level who would lack the ability and the resources to pursue individual claims. A class action is the most appropriate method for adjudicating their claims.

\* \* \* \* \* \*

With the assistance of able and cooperative lawyers on both sides, this court is confident that whatever problems may arise in the course of this suit can be satisfactorily resolved. The plaintiffs' motion for class certification is granted. The class certified is defined as follows:

> All commercial fishermen in the Bristol Bay salmon fishery who have participated in commercial salmon fishing activities in an entrepreneurial capacity in Bristol Bay during the 1971, 1972, 1973 or 1974 seasons, who are not past or present parties to the other three actions included in this litigation or past parties to this action, and who are shareholders of Bristol Bay Native Corporation or residents of Alaska or both.

## ON MOTION TO RECONSIDER CLASS DETERMINATION

This court has certified the above-captioned action to proceed as a class action pursuant to Fed.R.Civ.P. 23(b)(3) on behalf of the following class:

> All commercial fishermen in the Bristol Bay salmon fishery who have participated in commercial salmon fishing activities in an entrepreneurial capacity in Bristol Bay during the 1971, 1972, 1973 or 1974 seasons, who are not past or present parties to the other three actions included in this litigation or past parties to this action, and who are shareholders of Bristol Bay Native Corporation or residents of Alaska or both.

*Angason v. Alaska Packers Association*, No. C76–884–M (W.D.Wash., January 4, 1978, corrected February 1, 1978) (Opinion and Order Concerning Certification of a Class).

Defendants have moved this court to reconsider that class determination or to certify the class question for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

For the reasons stated below, this class will be redefined to exclude all fishermen who are not shareholders in the Bristol Bay Native Corporation (BBNC) from the class. The revised class definition will be the following:

> All commercial fishermen in the Bristol Bay salmon fishery who have participated in commercial salmon fishing activities in an entrepreneurial capacity in Bristol Bay during the 1971, 1972, 1973 or 1974 seasons, who are not past or present parties to the other three actions included in this litigation or past parties to this action, and who are shareholders of Bristol Bay Native Corporation and residents of Alaska.

### I. *Motion To Reconsider Class Determination*

The primary contentions of defendants in support of the motion for reconsideration are the following:

1) The four named plaintiffs lack sufficient knowledge concerning the complexities and difficulties of this antitrust case to serve as adequate representatives of the class;

2) The Court, in certifying the class, overlooked severe conflicts of interest within the class that destroy the unity of the class; and

3) Individual questions of fact and law relating to the effects of the alleged conspiracy on the class members and the measure of damages, and individual questions of fact and law arising from the counterclaims asserted by defendants, predominate over questions of fact and law common to the class members and render a class action unmanageable.

The court recognizes that the four named plaintiffs have little knowledge of the legal and factual complexities of this antitrust case. A careful review of the first and second depositions of the four plaintiffs, however, has convinced the court that these class representatives have an adequate understanding of the reasons for which this case was instituted and the legal basis of their claims. Furthermore, these class representatives are represented by able and experienced counsel, and for that reason the court finds that the class is adequately represented.

■ The court has been consistently aware of the potential for intra-class conflicts in this action. The four named plaintiffs are all fishermen who reside in Alaska and are members of the BBNC. Certification of a class that would have included fishermen residing in Alaska and fishermen residing elsewhere was denied because of conflicts of interest between resident and non-resident fishermen. *Donald F. Nielsen, et al. v. Alaska Packers Association, Inc., et al.,* No. A–75–69 (D. Alaska, November 10, 1976) (Memorandum and order concerning certification as a class action). At that time, the court also noted that the BBNC had acquired one of the defendants, Peter Pan Seafoods, and was operating a cannery in the Bristol Bay area. The court observed the following:

The fact that the named plaintiffs have a proprietary interest in one defendant cannery which is a present and future direct competitor of the other defendant canneries means their interests, with respect to a heavy damage judgment against other defendants as well as any equitable relief that would shape the future operation of the Bristol Bay fisheries, may diverge from the interests of fishermen who lack such a proprietary interest.

These apparent conflicts of interest and antagonism between non-resident and resident fishermen, and between fishermen who have proprietary interests in a competing cannery and those who do not, are imminent and serious and relate to an issue that is at the heart of this litigation—the past, present and future operation of the Bristol Bay fishery.

*Id.* at 8.

The plaintiffs subsequently moved for certification of a more restricted class limited to resident fishermen, but including fishermen who are BBNC shareholders and therefore have a proprietary interest in the cannery operated by Peter Pan Seafoods as well as fishermen who are not BBNC shareholders and therefore have no proprietary in the cannery operated by Peter Pan Seafoods. The court, in certifying that class, reiterated its concerns about the potential conflicts within the class between BBNC shareholders and now BBNC shareholders and its concerns about other potential conflicts within the class. The court concluded, however, that many of those conflicts relate to ancillary matters and not directly to the subject matter in controversy, and that those conflicts were not sufficiently severe, in relation to the matter in controversy, to make class certification inappropriate. The court observed that future changes in circumstances, would be dealt with when they arise. *Fred T. Angason, et al. v. Alaska Packers Association, Inc., et al.,* No. C76–884–M (W.D.Wash., January 4, 1978) (Opinion and Order Concerning Certification of a Class) pp. 8–9.

Following certification of the class, the court directed the parties to submit proposed forms of class notice. The plaintiffs submitted a proposed notice which contained the following statement:

Since Ted Angason, Gust Bartman, Billy Bartman and Walt Johnson [the class representatives] are shareholders in the [BBNC], you may assume that, [if the fishermen-plaintiffs win this lawsuit], they will probably not attempt to collect any substantial part of the monies [recovered] from defendant Peter Pan Seafoods, Inc. If they do decide not to collect monies owed from Peter Pan Seafoods, those fishermen who fished for Peter Pan Seafoods will still be entitled to their share of the monies this court says [are] owing from any or all of the other defendant canneries or canning companies.

Plaintiffs' Proposed Notice of Pendency Of Class Action, pp. 4–5.

Upon questioning during oral argument on this motion, counsel for the class stated that, in the event of a settlement by the class with any of the defendants or in the event of a recovery by the class, the class representatives would not attempt to recover more than a token amount from Peter Pan Seafoods.

In light of these developments, the court is of the opinion that the four class representatives, all of whom are BBNC shareholders and therefore have a proprietary interest in Peter Pan Seafoods, cannot adequately represent the interests of the non-BBNC shareholders, who do not have a proprietary interest in Peter Pan Seafoods. Because there are no class representatives before the court who can adequately represent the interests of the non-BBNC shareholders, these fishermen must be dropped from the class. The class will be redefined as follows:

All commercial fishermen in the Bristol Bay salmon fishery who have participated in commercial salmon fishing activities in an entrepreneurial capacity in Bristol Bay during the 1971, 1972, 1973 or 1974 seasons, who are not past or present parties to the other three actions included in this litigation or past parties to this action, and who are shareholders of Bristol Bay Native Corporation and residents of Alaska.

The final argument of defendants that individual questions of fact and law relating to the effects of the alleged conspiracy on the class members and the measure of damages, and individual questions of fact and law arising from the counterclaims asserted by defendants, predominate over questions of fact and law common to the class members and render a class action unmanageable has previously been fully briefed by the parties and considered by the court. Reconsideration of this issue is unnecessary.

II. *Question Of Certification For Interlocutory Appeal Under 28 U.S.C. § 1292(b)*

An order may be certified for interlocutory appeal by a district judge if the order (1) involves a controlling question of law, (2) as to which there is a substantial ground for differences of opinion, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. The court is of the opinion that a controlling question of law as to which there is a substantial ground for differences of opinion is not involved in the order in question and that an interlocutory appeal from that order would not advance the ultimate termination of the litigation. The motion for certification pursuant to 28 U.S.C. § 1292(b) will be denied.