Angel RIVERA, Plaintiff,

v.

**FAIR CHEVROLET GEO PARTNERSHIP, et al.,** Defendants.

No. 3:95cv485.

United States District Court, D. Connecticut.

March 25, 1996.

Joanne Faulkner, Law Offices of Joanne Faulkner, New Haven, CT, Daniel A. Edelman, O. Randolph Bragg, and Cathleen M. Combs, Edelman & Combs, Chicago, IL, for Plaintiff.

Stefan Richard Underhill, Stanley A. Twardy, Jr., Jonathan B. Tropp, Day, Berry & Howard, Stamford, CT, and Gary Mann Becker, Day, Berry & Howard, Hartford, CT, for Defendants, Fair Chevrolet Geo Partnership, Difeo Partnership, Inc., and Fair Chevrolet Corp.

Robert W. Allen, Tyler, Cooper & Alcorn, New Haven, CT, for Defendant, Shawmut Bank Connecticut, NA.

### RULING ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

DORSEY, Chief Judge.

Plaintiff alleges violations of the Truth in Lending Act, 15 U.S.C. § 1640 ("TILA"), the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110a *et seq.* ("CUTPA"), and Connecticut Retail Installment Sales Financing Act, Conn.Gen.Stat. § 36a–770 *et seq.* ("RISFA") in connection with a purchase of an automobile from Fair Chevrolet Geo Partnership. Plaintiff moves for class certification. Exercise of supplemental jurisdiction over the CUTPA and RISFA claims has been declined. The motion will be considered to the extent that it seeks certification for the TILA claims.

## I. BACKGROUND FACTS

Plaintiff purchased an automobile from Fair Chevrolet Geo Partnership,[1] in connection with which a TILA disclosure statement was provided. Fair also sold plaintiff a Balance Protection Plan ("BPP"), which provides that if the vehicle is destroyed or stolen before it is paid for, the buyer's liability is limited to the insurance deductible. Fair also charged a lien fee. Plaintiff alleges that the charge for the BPP and the entire lien fee, or alternatively, the $40 difference between the lien fee and Connecticut's recordation fee of $10, are "finance charges" as defined by TILA and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.4. The BPP charge and the $50 lien fee were included in the "amount financed." Plaintiff alleges that such inclusion violated TILA by underestimating the "finance charge" and "annual percentage rate."

## II. DISCUSSION

■ Plaintiff seeks to certify two classes for the TILA claims pursuant to Fed. R.Civ.P. 23, which provides in relevant part:

(a) ... One or more members of a class may sue ... as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class ... [and] ... (b)(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a

---

1. Plaintiff also names DiFeo Partnership, Inc. and Fair Chevrolet Corp., the partners of Fair Chevrolet Geo Partnership, as defendants. All three are referred to collectively throughout this ruling as "Fair."

class action is superior to other available methods for the fair and efficient adjudication of the controversy.

When considering whether to certify a class, the allegations in the complaint are taken as true. *Sharif by Salahuddin v. New York State Educ. Dep't,* 127 F.R.D. 84, 87 (S.D.N.Y.1989).

TILA specifically provides for the maintenance of a class action. 15 U.S.C. § 1640. However, damages in class actions are limited to actual damages, statutory damages of $500,000 or 1 per centum of the net worth of the creditor, costs and reasonable attorney's fees. § 1640(a).

The first proposed class ("BPP class") consists of all persons described as follows:

a) They entered into a transaction documented as a consumer credit transaction, in that Truth-in-Lending disclosures were provided;

b) They purchased the contract provision known as the Shawmut BPP;

c) The cost of the BPP provision was excluded from the "finance charge" and the "annual percentage rate" and included in the "amount financed;"

d) Shawmut Bank Connecticut, N.A. ("Shawmut") is the assignee (in whole or in part) with respect to the transaction.[2]

The proposed class period would be one year prior to the filing of the action, the limitations period. *See* 15 U.S.C. § 1640(e). At a minimum, the class consists of 2,484 members.

The second proposed class ("lien fee class") consists of all persons described as follows:

a) They entered into a transaction with Fair documented as a consumer credit transaction, in that Truth-in-Lending disclosures were provided;

b) Their contract includes a lien fee paid to public officials in excess of $10;

c) The "lien fee," or the portion over $10, was not included in the finance charge.

The proposed class period would be one year prior to the filing of the action. Class size would be at least 20–30 members.

Defendants oppose certification. Numerosity is not challenged. They claim that plaintiff does not meet the typicality and commonality requirement, that plaintiff cannot fairly and adequately represent either class and that class actions are not the superior method for adjudication of the claims. Defendants' challenges asserting similar grounds will be analyzed together.

### A. Commonality and Typicality

#### 1. BPP Class

■ Plaintiff alleges that inclusion of the BPP in the "amount financed" and not in the "finance charge" and "annual percentage rate" violates TILA as a matter of law. Shawmut argues that the claim is not typical of others in the class because plaintiff testified at deposition that the salesman told him he was required to buy the BPP in order to purchase the car. Thus, defendant asserts that plaintiff's purchase of the BPP was involuntary and should have been included in the finance charge.

■ However, defendant grafts on the basic claims facts surrounding plaintiff's transaction. Plaintiff's claim is simply that the BPP charge is included in the "amount financed" in all transactions where the BPP was sold. The claim is not based on the facts as to how the BPP came to be included in the "amount financed." Plaintiff must show his claim arises from the same practice or course of conduct that gives rise to claims of other class members, and that the claims are based on the same legal theory. *Garfinkel v. Memory Metals, Inc.,* 695 F.Supp. 1397, 1404 (D.Conn.1988). Factual differences will not render such a claim atypical. *Edmondson v. Simon,* 86 F.R.D. 375, 381 (N.D.Ill.1980). Since the legal theory is the same for the entire class, the BPP class meets both the typicality and the commonality requirements.

---

**2.** The complaint identifies two classes for the TILA claim involving the BPP. One consists of debtors for whom Fair was the creditor, and the other is debtors as to whom Shawmut was the assignee. Plaintiff concedes that the class involving Fair lacks the required numerosity. He does not pursue certification of that class.

## 2. *Lien Fee Class*

■ The claim for the lien fee class is that the entire lien fee, or at least the portion of the lien fee over $10, was improperly not included in the finance charge. Fair argues that plaintiff's claim regarding the lien fee is not typical of the class because plaintiff's $50 fee included other charges. At issue is whether the lien fee should be disclosed in the amount financed or in the finance charge, not what additional costs underlie the fee. The relevant question is how the lien fee so specified, or the charges in excess of the lien fee charged by the state, must be disclosed. Plaintiff's facts are common with other class members in that either the entire lien fee charged or the portion of the lien fee over $10, was not included in the finance charge. Since the proposed class shares a common legal question, and the claim arises from Fair's alleged exclusion of the lien fee from the finance charge in every class member's transaction, including plaintiff's, the lien fee class meets both the commonality and typicality requirements of Fed.R.Civ.P. 23(a)(2) and (3).

## B. *Fair and Adequate Representation*

■ To maintain a class action, plaintiff must also "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Generally, this means plaintiff must meet two requirements. "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992), *cert. dismissed*, 506 U.S. 1088, 113 S.Ct. 1070, 122 L.Ed.2d 497 (1993). The underlying purpose of this requirement is to protect the due process rights of absent parties. *Curley v. Brignoli, Curley & Roberts Assoc.*, 915 F.2d 81, 86 (2d Cir.1990), *cert. denied*, 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991); *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

■ Defendants do not dispute the first requirement. Rather they challenge plaintiff's adequacy as a class representative because he is unfamiliar with the case, he does not have the financial ability to support the litigation, and he is seeking full statutory damages.

For both classes, defendants challenge plaintiff's ability to represent the class adequately, claiming he lacks familiarity with the case. Courts conflict on this issue. *Compare Greenspan v. Brassler*, 78 F.R.D. 130, 133–34 (S.D.N.Y.1978) (inability to identify all but one defendant, lack of awareness of certain elements of the complaint, limited factual knowledge of underlying facts, and failure to meet with attorneys until basic groundwork of action had been laid made plaintiffs inadequate class representatives) *with In re Bristol Bay, Alaska Salmon Fishery Antitrust Litigation*, 78 F.R.D. 622, 627 (W.D.Wash.1978) ("It is not necessary that named class representatives be knowledgeable, intelligent, or that they have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action."). The Seventh Circuit's analysis of the issue is persuasive.

> [T]he class representative's role is limited. It was found not to be enough to defeat a class certification in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S.Ct. 845, 847–48, 15 L.Ed.2d 807 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendant.

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir.1981), *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982); *accord Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 677 (N.D.Ill.1989); *Deary v. Guardian Loan Co., Inc.*, 534 F.Supp. 1178, 1190 (S.D.N.Y.1982).

Although plaintiff's deposition demonstrates that his understanding of the case is sketchy, plaintiff is an adequate class representative. He understands the duties and responsibilities of a class representative. (Pl.Dep. at 12.) He met with his attorney several times before the lawsuit was brought (Id. at 22), and reviewed the complaint and

motion for class certification. (Id. at 30.) He understands that the claims involve Truth-in-Lending violations (Id. at 10 and 23), and that, in general, his claim is that he was overcharged for gap insurance, i.e., BPP, (Id. at 10) and the lien fee. (Id. at 47.) He also explains the claim as "a high interest rate." (Id. at 10.) This is an accurate layman's description of the TILA actual damages claim that plaintiff is entitled to the difference between the disclosed finance charge and the higher, actual finance charge. Plaintiff also identified the defendants as Geo, Shawmut and Chevy. (Id. at 10.) The fact that plaintiff did not identify the general partners legally responsible for the actions of the dealer does not detract from his knowledge of the case.

■ As for the BPP class, Shawmut challenges plaintiff's ability for two additional reasons. Shawmut contends that plaintiff is unable to financially support the litigation, and that therefore, he cannot fairly and adequately represent the class. It is uncertain, based on plaintiff's deposition testimony, that he would be able to finance the costs of a class action. However, the only relevant inquiry is plaintiff's willingness to pay his *pro rata* share of expenses. In *Rand v. Monsanto*, 926 F.2d 596 (7th Cir.1991), the court held "that a district court may not establish a *per se* rule that the representative plaintiff must be willing to share all (as opposed to a *pro rata* share) of the costs of the action." *Id.* at 601.

> Class actions assemble small claims- usually too small to be worth litigating separately, but repaying the effort in the aggregate. A representative plaintiff gains nothing from the collective proceeding. Under the district court's rationale [that a class representative must be willing to pay all costs], however, he could well lose, because filing the class suit would expose him to the entire costs of the case.... The very feature that makes class treatment appropriate—small individual stakes and large aggregate ones—ensures that the representative will be unwilling to vouch for the entire costs.

*Id.* at 599.

Shawmut also argues that although counsel has advanced the expenses of the action, attorneys may advance expenses only if the client remains ultimately responsible for such expenses. Connecticut Rules of Professional Responsibility Rule 1.8(e)(1) (1995) (adopted by the District of Connecticut pursuant to Local Rule 3(a)). The court in *Rand* concluded that a rule allowing lawyers to advance costs, but requiring a client to remain ultimately responsible was inconsistent with Fed.R.Civ.P. 23, and thus could not be applied to class actions. *Id.* at 600; *accord, County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1413–15 (E.D.N.Y. 1989). The reasoning of the *Rand* court is persuasive, and plaintiff need not show a willingness or ability to be responsible for all costs in order to be an adequate class representative.

Plaintiff's attorneys are advancing expenses for the action. Plaintiff testified that he understood that he was responsible for expenses should defendants prevail. (Pl.'s Dep. at 17.) No evidence has been presented that plaintiff is not willing to pay his *pro rata* share. Given that the TILA claim is the very type of claim illustrated in *Rand*, where the individual stakes are low, but the aggregate stakes are high, plaintiff need only be willing to pay his *pro rata* share.

■ Secondly, Shawmut argues that it appears that plaintiff is seeking his full individual amount of statutory damages, i.e. $1,000. If this were true, it would put him in conflict with the rest of the class, which would be entitled to a possible recovery of approximately $200 each for a minimum class of 2,484, given the $500,000 cap on statutory damages. However, plaintiff seeks no more statutory damages than the other class members. The deposition testimony referenced by defendant in no way supports a claim that plaintiff is seeking more than the rest of the class. In his complaint, he requests the same relief as the rest of the class. Furthermore, plaintiff's counsel represents that plaintiff seeks no more than his *pro rata* share of statutory damages plus actual damages. If plaintiff seeks only the *pro rata* share of the statutory recovery, his interests are not antagonistic to the rest of the class. *Perry v. Beneficial Finance Co. New York,*

*Inc.*, 81 F.R.D. 490, 496 (W.D.N.Y.1979).[3] Accordingly, plaintiff's interests in damages are not antagonistic to the rest of the class.

In sum, plaintiff meets the requirements of Fed.R.Civ.P. 23(a)(4).

### C. *Superiority*

■ Fed.R.Civ.P. 23(b)(3) requires a finding that the class action is the superior method for fair and efficient adjudication of the controversy. Shawmut contends that a class action is not the superior method for adjudication for the BPP class.

Shawmut contends that it would be superior for plaintiff to adjudicate the BPP claim individually because he could then seek $1000 in statutory damages as opposed to a *pro rata* share. Following this argument to its natural conclusion, a class of more than 500 would never be certified, because the named plaintiff's *pro rata* share would be less than $1000. Such a result would severely weaken the class action enforcement provision of TILA, a result not supported by TILA's legislative history. *See Sarafin v. Sears, Roebuck & Co.*, 73 F.R.D. 585, 588 (N.D.Ill. 1977); Senate Report No. 94–590, 94th Congress, 2d Session 8, reprinted in 1976 U.S.Code Cong. and Ad. News, at 438. Thus, the rule of the *Sarafin* court that "[a]bsent some evidence of impropriety ... we do not require an explanation of plaintiff's choice of a more effective deterrent to a creditor over greater personal gain for themselves." *Sarafin*, 73 F.R.D. at 589. As there is no showing of impropriety in plaintiff's choice to proceed with a class action, the fact that plaintiff is seeking a *pro rata* share less than the statutory maximum does not defeat the superiority of a class action.

■ Shawmut also challenges, in a similar vein, that because the other BPP class members would necessarily be entitled to substantially less than the statutory maximum in a class action than if they pursued an individual action, a class action is not superior. This problem is easily remedied by prop-

er notice under Fed.R.Civ.P. 23(c)(2) to class members that they may "opt out." *Sarafin*, 73 F.R.D. at 588; *Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 153 (E.D.Pa.1976); *see* 3B Moore's Federal Practice ¶ 23.02[2.–26] at 23–68 (2d ed. 1995). Because the "opt out" provision is available, the potential for a lesser recovery by class members does not defeat the superiority of a class action.

Lastly, Shawmut contends that since plaintiff intends to pursue the action individually, if certification is denied, a class action is not superior. If the class is not certified, plaintiff is certainly entitled to pursue an individual damage award. However, the class action remains the superior remedy because it would provide a more effective deterrent for TILA violations and remedy more violations if successful.

Because the TILA claims for both the BPP class and the lien fee class involve low individual stakes, it is unlikely that the alleged violations would be enforced absent a class action. Thus, class members interests lie in the prosecution of this controversy as a class action, and not individually. Furthermore, given the common question of law amongst all members of the classes, a class action in one forum is the most efficient method for individuals to have the claims heard. Therefore, the class action is a superior remedy for both classes and plaintiff meets the superiority requirement of Fed.R.Civ.P. 23(b)(3).

### III. CONCLUSION

Plaintiff has met the requirements of Fed. R.Civ.P. 23. Accordingly, plaintiff's motion to certify the BPP class and the lien fee class (doc. 23), as defined above, is granted.

SO ORDERED.

---

3. TILA limits plaintiff's recovery to actual damages, plaintiff's *pro rata* share of statutory damages, costs and attorney's fees. *See* 15 U.S.C. § 1640(a). Plaintiff's settlement demand seeks more than this limited recovery. However, plaintiff's settlement demand was made before the state claims were dismissed. Thus, based on representations of counsel that plaintiff seeks only actual damages and his *pro rata* share of statutory damages, antagonism against the rest of the class, at this juncture, is not present.