Robert RULAND, et al.

v.

**GENERAL ELECTRIC COMPANY.**

Civ. No. B–79–303.

United States District Court,
D. Connecticut.

April 28, 1982.

William H. Clendenen, Jr., David M. Lesser, Robert F. Carter, Clendenen & Lesser, New Haven, Conn., for plaintiffs.

William R. Murphy, George E. O'Brien, Jr., Tyler, Cooper, Grant, Bowerman & Keefe, New Haven, Conn., for defendant.

### RULING ON PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S RULING

ELLEN B. BURNS, District Judge.

This action originally filed in Connecticut Superior Court, was removed to this court on motion of defendant General Electric Company on the basis of diversity, 28 U.S.C. §§ 1332(a), 1441(a). The amended federal complaints are in four counts, all stemming from the claimed pollution of the Housatonic River with "PCB's"—polychlorinated biphenyls—used by General Electric in a mixture for insulation in electrical transformers. In brief, plaintiffs aver that General Electric discharged PCB's from its Pittsfield, Massachusetts, plant into the Housatonic, an interstate waterway, in violation of federal common law, the Connecticut

common law of nuisance and trespass and Conn.Gen.Stat. § 19–312. Plaintiffs seek damages for the diminished value of their real property along the river because of the known PCB pollution, punitive damages and equitable relief, including dredging to remove contaminated riverbed silt.

Plaintiffs moved for class certification and the magistrate conducted a two-day evidentiary hearing. During oral argument before the magistrate, plaintiffs' counsel described the putative class as "[w]aterfront property owners on the Housatonic River and its impoundments south of the Defendant's manufacturing facility at Pittsfield, Massachusetts, to Long Island Sound." Transcript at 360. The type class sought was a (b)(1) class, Fed.R.Civ.P. 23(b)(1), Transcript at 346.

The magistrate essentially ruled that, although the requirements of rule 23(a) were arguably satisfied on these facts, plaintiffs failed to show a genuine risk of conflict for defendant absent class treatment, Fed.R. Civ.P. 23(b)(1)(A), or a likelihood of adverse remedial orders, Fed.R.Civ.P. 23(b)(1)(B). Plaintiffs objected to these findings and requested *de novo* consideration. Additionally, they challenged the referral to the magistrate and requested certification pursuant to rule 23(b)(2) or (b)(3).

A. Plaintiffs' dissatisfaction with the magistrate's ruling includes an attack on the constitutionality of the system of referring such matters to magistrates at all. The challenge is academic in the present posture of the case—*de novo* review—but the contention would necessarily be rejected at all events.

In these days of ever increasing caseloads, the federal magistrates are indispensable components in the administration of justice in the federal courts. As in this case, the

> magistrate's review helps focus the court's attention on the relevant portions of what may be a voluminous record, from a point of view as neutral as that of an Article III judge. Review also helps the court move directly to those legal arguments made by the parties that find

some support in the record. Finally, the magistrate's report puts before the district judge a preliminary evaluation of the cumulative effect of the evidence in the record, to which the parties may address argument, and in this way narrows the dispute. Each step of the process takes place with the full participation of the parties. They know precisely what recommendations the judge is receiving and may frame their arguments accordingly.

*Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 554–555, 46 L.Ed.2d 483 (1976).

■ Statutorily, reference of the issue of class certification is permissible. 28 U.S.C. § 636(b)(1)(B); Local R. for U. S. Magistrates 1(C)(1) (as amended Oct. 1, 1981). After *United States v. Raddatz,* 447 U.S. 667, 681–84, 100 S.Ct. 2406, 2415–2416, 65 L.Ed.2d 424 (1980), there is little doubt that referral of such matters to a magistrate is constitutionally valid so long as the district judge makes a full *de novo* review. *But see* Note, *Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View,* 88 Yale L.J. 1023 (1979).

■ B. Turning to the issue of class certification, the Court concludes the magistrate was correct in his determination that plaintiffs did not meet the (b)(1) criteria. The transcript of the evidentiary hearing simply shows no evidence to support a finding of a risk of inconsistent or varying adjudications which would establish incompatible standards for General Electric absent certification. Fed.R.Civ.P. 23(b)(1)(A). Plaintiffs provide nearly no analysis of this complex question except in conclusory fashion, Plaintiffs' Memorandum In Support of Class Certification at 7. Invocation of insular language in the Advisory Committee notes, *see Proposed Amendments To Rules of Civil Procedure for the United States District Courts,* 39 F.R.D. 73, 100 (1966), is no substitute for careful consideration.

This Court cannot conceive of any state or federal court in Massachusetts or Connecticut invoking its equitable powers to

put General Electric in potential conflict; indeed, it is difficult, even speculative, to characterize the conflict. *See, e.g., Ratner v. Chemical Bank New York Trust Co.,* 54 F.R.D. 412, 415 (S.D.N.Y.1972). As the magistrate noted, the possibility of incompatible adjudications "has not been persuasively shown in this particular instance a realistic 'risk' . . . that persons situated like plaintiffs would seek—or courts seriously consider—imposition of decrees placing G. E. in a genuinely conflicted position."

Similarly, plaintiffs' identification of the risks posed to class members due to adverse adjudications, Fed.R.Civ.P. 23(b)(1)(B), rings hollow. Mere recitation of the supposed risks—increased pollution due to downstream flushing of PCB's; river back-up caused by downstream damming—is sufficient reason to reject them as unlikely solutions in any court. *Robertson v. National Basketball Association,* 389 F.Supp. 867 (S.D.N.Y.1975), *aff'd,* 556 F.2d 682 (2d Cir. 1977), provides no support for plaintiffs in this regard, since, as defendant notes, *Robertson* turned on its facts, as this case must.

C. The magistrate was also clearly troubled by the "adequacy of representation" requirement, Fed.R.Civ.P. 23(a)(4). He noted that "[a]s to this last requirement, . . . it is not at all clear that these plaintiffs understand just how painstaking and correspondingly expensive the presentation and determination of the PCB pollution controversy might prove in view of its apparently complex scope and high stakes." Ruling on Motion for Class Certification at 7.

Having thoroughly reviewed the file, this Court is of the opinion that this record does not support a finding that these class representatives or their attorneys will adequately represent absent class members. To be sure, this conclusion does not mean the Court has found them to be *inadequate* representatives; rather, the record reflects too little for the Court to make a finding.

Judging from the unsigned depositions on file, the individual plaintiffs seem to be intelligent and concerned about the PCB pollution of the Housatonic. Most of them

are active in local civic organizations and all appear to have a stake in the river's condition. None of them, however, judging from the deposition transcripts on file with the Court, have a realistic conception of the likely costs of what promises to be a protracted and expensive lawsuit.

A contingent fee arrangement has apparently been worked out between the attorneys and their clients, and while most named plaintiffs believe they should be responsible to "pick up a fair share" of litigation costs, the Court concludes plaintiffs have a false impression of the possible costs. Mr. Eggleston felt he would have to pay no more than $500; the Housatonic Knolls Recreation Association made a $100 commitment to payment of costs. Mr. Lorenzo thought the plaintiff class might be responsible for $3,000, split among them.

Unlike the depositions of plaintiffs in *Mulcahey v. Petrofunds, Inc.,* 79 F.R.D. 272 (S.D.Tex.1978), the depositions of these plaintiffs do not reveal they have the resources to fund these suits. *Id.* at 276–77. Plaintiffs' assertions they will obtain aid free from "public officials" and will draw on "public knowledge" as an alternative to hiring experts seems somewhat wishful and uncertain at best and, at worst, risky litigation strategy.

The record does not show who has paid the necessary expenses so far. *E.g., Esler v. Northrup Corp.,* 86 F.R.D. 20, 36 (W.D. Mo.1979). There is no telling analysis of plaintiffs' resources. There is no forecast, not even a guess, as far as this record shows, of the financial needs of the action and the funding sources to meet them. *See* A. Miller, An Overview Of Federal Class Actions: Past, Present, And Future 32–34 (Fed.Jud.Ctr.1977) (hereinafter, "Overview").

Although plaintiffs have a keen interest in the outcome of this case, it is uncertain whether they have turned over responsibility to guide the action to their lawyers. Blind reliance, even on competent counsel, is insufficient. *In Re Goldchip Funding Co.,* 61 F.R.D. 592, 594–95 (M.D.Pa.1974). The due process interests of the absent class

members require some restraint on the attorneys. Overview at 34.

And of course, the attorneys themselves must be qualified, experienced and able to conduct the litigation. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968). In support of this requirement, counsel have directed the Court's attention to cases in which at least two of them have successfully litigated class actions, chiefly in the consumer credit field. Standing alone, citation of these cases does not establish an adequate record in the type of litigation here involved. Nor is there any indication of how many lawyers actually devote time to this case or what their support staffs or resources are. *See Cullen v. New York State Civil Service Commission*, 435 F.Supp. 546, 560 (E.D.N.Y.1970); Overview at 35–36.

The Court does not question the competence of counsel whose ability has been demonstrated in other litigation in this court. However, on this record, the Court is unable to say counsel appreciate that this is not just another case, but a career. Adequacy of representation must be tested throughout the course of the adversary process and not just on this motion. *Johnson v. Shreveport Garment Co.*, 422 F.Supp. 526, 534–41 (W.D.La.1976); *see also Cullen v. New York State Civil Service Commission*, 566 F.2d 846, 848–49 (2d Cir. 1977).

Taken individually or together, these points are significant. The present record does not reflect sufficient information on which to premise a ruling either that these are adequate representatives or that they are not. Given the risks involved, *see Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973), the requirement of subparagraph (a)(4) is too important to rest on this record. Overview at 29. More information is clearly required.

D. With the problems of the present record, the Court deems it unnecessary to pass on any other issues raised. It may well be that this case is destined for class action treatment, *see, e.g., Ouellette v. International Paper Co.*, 86 F.R.D. 476 (D.Vt. 1980), but first, a more thorough presentation of the certification issue is required. Plaintiffs' objections to the magistrate's ruling are overruled and it is accordingly approved, adopted and

SO ORDERED.

## APPENDIX

## RULING ON MOTION FOR CLASS CERTIFICATION

This case involves a large-scale river pollution controversy. The immediate question before the Court is not the suit's merit, see *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–178 [94 S.Ct. 2140, 2152–2153, 40 L.Ed.2d 732] (1974), but the appropriateness of class action treatment as requested by plaintiffs.

Plaintiffs Mr. and Mrs. Ruland reside on shorefront property on Lake Zoar, an impoundment of the Housatonic River in Connecticut, and commenced the instant litigation by Connecticut state court suit brought against defendant General Electric Company ("G. E.") in the summer of 1979, alleging grave, long-term contamination of the river through upstream discharge at G. E.'s Pittsfield, Massachusetts plant of toxic chemical substances known as polychlorinated biphenyls ("PCB"), which G. E. used until 1977 in the manufacture of electrical transformers. Although that original complaint for damages and equitable relief raised purely state law tort claims like nuisance, and identified Connecticut as both G. E.'s supposed principal place of business and plaintiffs' residence, defendant promptly undertook removal to this Court on asserted grounds of diverse state citizenship of the parties, cf. 28 U.S.C. §§ 1332, 1441, contending that G. E. was in fact a New York corporation with its "principal place of business" outside Connecticut, cf. 28 U.S.C. § 1332(c). Joined in this Court by a number of intervening property owners, plaintiffs in any event soon amended their complaint to set forth a new first count alleging "pollution of interstate waters in violation of the federal common law" with corresponding federal question jurisdiction invoked under 28 U.S.C. § 1331, cf. *Illinois v. City of Milwaukee*, 406

U.S. 91, 98–99 [92 S.Ct. 1385, 1390–1391, 31 L.Ed.2d 712] (1972). It may accordingly be assumed for present purposes, cf. *United States v. Montreal Trust Co.*, 358 F.2d 239, n. 4 at 242 (2 Cir.), *cert. denied*, 384 U.S. 919 [86 S.Ct. 1366, 16 L.Ed.2d 440] (1966), that the federal forum is indeed appropriate for scrutiny of the claims advanced, compare, e.g., *Housatonic River v. General Electric Co.*, 462 F.Supp. 710 (D.Conn.1978).

The propriety of a class suit framework for resolving the litigation is now at issue. An evidentiary hearing was conducted at plaintiffs' request, see *Marcera v. Chinlund*, 565 F.2d 253, 255 (2 Cir. 1977), again not to test the strength of the named plaintiffs' case, see *Eisen, supra* [417 U.S.] at 177 [94 S.Ct. at 2152], but to elicit context for their assertion that settled court rule requirements for class-wide proceedings have been met in this instance. Those requirements are in the first place that there be a definable class which presents common questions of law or fact, with membership so numerous that joinder is impracticable; as might be expected, the would-be representative parties themselves must be members with claims typical of the class, and must be willing and able adequately to protect class interests. Cf. Rule 23(a), Fed.R.Civ.P. In addition, under the particular class approach proposed by plaintiffs' counsel at this time, plaintiffs must demonstrate under Rule 23(b), Fed.R.Civ.P., that

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests".

On the merits, plaintiffs will attempt to prove that there has been PCB pollution of the Housatonic River attributable to G. E. which warrants specific focus and extraordinary relief measures, both because that pollutant is now singularly damaging as an existing threat to health, recreational use, and property values, and because PCB is of an indefinitely persisting nature absent corrective action. In pursuing those contentions, the several currently named plaintiffs seek to represent a class described by their attorneys at oral argument as consisting of all "waterfront property owners on the Housatonic River and its impoundments south of the defendant's manufacturing facility at Pittsfield, Massachusetts to Long Island Sound". Class-wide damages would be sought—e.g., for property value loss allegedly tied to PCB pollution—together with such extensive equitable relief measures as dredging to remove PCB-contaminated silt.

The stretch of river just mentioned is some 145 miles long, an interstate waterway influenced by a number of tributaries and flowing through land of varying character and uses. Its "waterfront property owners" would indeed seem a definable, highly numerous group to which at least most plaintiffs belong. If not literally all such "property owners"—such as business concerns—share plaintiffs' concerns, many of course would, and common issues certainly exist. Whether named plaintiffs' claims are "typical", Rule 23(a)(3), Fed.R.Civ.P., is strongly questioned by defendant; for example, their properties apparently all lie within a relatively short segment of the river, over 100 miles downstream from G. E.'s Pittsfield plant but not far south of the confluence of the Housatonic River and Still River, the latter a tributary from the Danbury area and itself known to be polluted by PCB—which has been used in a number of industrial and consumer products and probably released into the environment in varying ways such as from land-fills. On the other hand, the obvious problems of proof here like causation which might not be shared by class members north of the Still do not mean simply that the present plaintiffs are the wrong standard bearers. In this case, "typicality" could be elusive;

as suggested by plaintiffs' own hearing witness, a Connecticut Department of Environmental Protection official who has been engaged in coordinating a widespread study of Housatonic PCB pollution, there is perhaps strictly no "typical" stretch of river, and local conditions and influences from place to place along the river must be taken into account—yet he would naturally enough wish to have the river ultimately dealt with as a single, overall system.

What defendant's non-typicality argument does at a minimum indicate is that the suit inquiry promises to be complex. Standard class certification requirements are frequently at least interrelated, and any truly independent meaning or force to the concept of "typicality" is perhaps questionable—that is, beyond assuring that plaintiffs are indeed class members who share significant common questions with others' claims, Rule 23(a)(2), Fed.R.Civ.P., and will protect absent class members' interests, Rule 23(a)(4), Fed.R.Civ.P. As to this last requirement, adequacy of representation to guarantee due process safeguards for persons not before the Court, it is not at all clear that these plaintiffs understand just how painstaking and correspondingly expensive the presentation and determination of the PCB pollution controversy might prove in view of its apparently complex scope and high stakes.

Focusing again on the suit's likely complexity and scope, the patent appeal of an examination of the whole river system does not impel resort to plaintiffs' class litigation approach. Indeed, it may even support defendant's assertion that the proffered test for class certification is insufficient, because the evident nature and scale of the problem posed are such that it is unlikely that courts would act in the prejudicially piecemeal fashion plaintiffs apprehend. As noted above, plaintiffs speak of a risk of either "varying adjudications . . . which would establish incompatible standards of conduct" for G. E., Rule 23(b)(1)(A), Fed.R.Civ.P., or adjudications "which would as a practical matter be dispositive of the interests" of absent, non-party class members or "substantially impair or impede their ability

to protect their interests", Rule 23(b)(1)(B), Fed.R.Civ.P. If looked at in terms of different individuals' claims for damages, the Rule 23(b)(1) formula just does not fit this case. The question of equitable relief bears further comment.

Rule 23(b)(1)(A) is of course addressed to the danger of conflicting court orders in individually pursued cases which leave the opposing party unable to act, e.g., when mandated by one court's order to take a certain action prohibited by another court. Plaintiffs point to the comment in the Advisory Committee's *Note*, 39 F.R.D. 69, 100 (1966), that "individual litigations of the rights and duties of riparian owners, or of landowners' rights and duties respecting a claimed nuisance, could create a possibility of incompatible adjudications"; however cogent in other circumstances, that "possibility" has not been persuasively shown in this particular instance a realistic "risk", Rule 23(b)(1), *supra*, that persons situated like plaintiffs would seek—or courts seriously consider—imposition of decrees placing G. E. in a genuinely conflicted position. While Rule 23(b)(1)(B) is aimed rather at protecting class members from prejudicial effects of the conduct of merely individual suits by their fellows, such as when hurried, unsupervised pursuit of claims to a fund insufficient to satisfy fully all interested parties would defeat latecomers' rights, there is similarly no persuasive reason advanced to believe that in the situation here presented a court would countenance futile relief measures or supposed remedial action which would be *adverse* to others similarly situated.

There are other and more commonly employed federal class proceeding tests, assuming Rule 23(a)'s prerequisites met: i.e., Rule 23(b)(2)'s relatively simple requirement in a straightforward suit for equitable relief that the opposing party "has acted or refused to act on grounds generally applicable to the class", and the more complex requirement of Rule 23(b)(3) in other cases of a finding by the court that common questions of law or fact "predominate" and that "a class action is superior to other

available methods for the fair and efficient adjudication of the controversy", the latter rule corresponding to the state court criterion, see Sec. 88 of the Practice Book, alleged in the original complaint. Plaintiffs in this Court, however, have yet to advance supporting arguments in the alternative for class certification under Rule 23(b)(2)–(3), Fed.R.Civ.P., perhaps avoiding a (b)(2) request initially because claims for damages are presented as an important element of the case, and a (b)(3) request because of perceived difficulty or uncertainty in that subsection's application—as well as its associated notice costs, cf. Rule 23(c)(2), Fed.R.Civ.P., *Eisen,* supra [417 U.S.] at 177–179 [94 S.Ct. at 2152–2153].

While not inconsiderable, notice cost concern might not be allayed under any class rule approach, since it is possible that equivalent measures would be ordered in any event, cf. Rule 23(d)(2), Fed.R.Civ.P. More importantly, recourse to Rule 23(b)(3) guideposts seems at first sight on this record calculated to achieve a more adequately inclusive and explicit balancing inquiry— not only the better to assess in overall context opposing arguments now made under the categories of "commonality" and "typicality", cf. Rule 23(a)(2)–(3), but also to consider, *inter alia,* private and public interests implicated by the existence of other private litigation, cf. *Housatonic River v. General Electric Co.,* 6 Conn.L.Trib. No. 23 at 9 (Fairfield Super.Ct.1980), and of ongoing public agency scrutiny and involvement.

In short, plaintiffs have not persuasively demonstrated that class certification as requested under Rule 23(b)(1), Fed.R.Civ.P., is appropriate. The instant application for such class certification is accordingly denied on the existing record, subject to prior review by the trial judge, cf. 28 U.S.C. § 636(b), Rule 2, D.Conn.Rules for U. S. Magistrates, as amended (March 1980).

Since that record appears incomplete, however, and the standard of review on prompt objection is "de novo", § 636(b)(1), counsel remain free in the course of the now-ensuing review proceedings to tender any such alternative or supplemental asser-

tions directly to the trial judge as she may in her discretion permit or require. Counsel may wish at the same time to address to the trial judge in the first instance any scheduling proposals regarding plaintiffs' now-filed application for an order directing G. E. to dredge immediately, prior to final judgment, an impoundment of the Housatonic River known as Woods Pond, in Massachusetts.

Dated at New Haven, Connecticut, this 8th day of December 1980.

/s/ Arthur H. Latimer
ARTHUR H. LATIMER
UNITED STATES MAGISTRATE