Jeffrey MACARZ, on behalf of himself
and all others similarly situated,

v.

TRANSWORLD SYSTEMS, INC.

No. 3:97CV2194 (JBA).

United States District Court,
D. Connecticut.

April 18, 2000.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Rick D. Young, Jeffrey T. Mitchell, Edelman, Combs & Latturner, Chicago, IL, Joanne S. Faulkner, Kennedy & Faulkner, New Haven, CT, for Jeff Macarz, o/b/o himself & all others similarly situated, plaintiff.

Robert W. Allen, Tyler, Cooper & Alcorn, New Haven, CT, Christopher M. Mazzia, Anderson, Zeigler, Disharoon, Gallagher & Gray, Santa Rosa, CA, for Transworld Systems, Inc., defendant.

---

### RULING ON MOTION FOR CLASS CERTIFICATION [DOC. # 49]

ARTERTON, District Judge.

## I. INTRODUCTION

Previously in this case, the Court ruled that the defendant's collection letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff Jeffrey Macarz now moves to certify the case as a class action. Defendant Transworld opposes class certification, primarily on grounds that Mr. Macarz is neither typical nor a fair representative of the interests of the class, and that the class action vehicle is improper in the circumstances of this case. For the reasons that follow, plaintiff's motion for class certification is GRANTED.

## II. DISCUSSION

### A. Rule 23(a)

Before certifying a class, a district court must determine that the party seeking certification has satisfied the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *See Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997). Furthermore, the party seeking certification must qualify under one of three criteria set forth in Rule 23(b). *See Comer v. Cisneros,* 37 F.3d 775, 796 (2d Cir.1994). Plaintiff here seeks certification under Rule 23(b)(3), which authorizes class actions where "the court finds that the questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Defendant concedes that the numerosity requirement has been met in this case, where the violative letters allegedly have been sent to some 15,000 consumers. The Court will consider the remaining prongs of Rule 23's requirements in turn.

### 1. Commonality under Rule 23(a)(2)

The commonality requirement is met if the putative class members' grievances share a common question of law or of fact. *See Marisol A.,* 126 F.3d at 376; 3B Moore's Federal Practice & Procedure ¶ 23.06–1 (1996). "Rule 23(a)(2) requires only that questions of law or fact be shared by the prospective class. It does not require that all questions of law or fact raised be common." *Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 352 (E.D.N.Y.1997) (internal citations omitted); 1 Newberg on Class Actions at § 3.10 (3d ed.1992). Courts have previously found common questions of law or fact sufficient to certify a class where FDCPA plaintiffs alleged the receipt of the same or similar collection letter as the basis of the lawsuit. *See Savino,* 173 F.R.D. at 352; *Avila v. Van Ru Credit Corp.,* 1995 WL 41425, *11 (N.D.Ill.1995)

Here, plaintiff seeks to represent a class composed of all Connecticut residents who (1) were sent a collection letter by Transworld where (2) the letter was in the same form as the letter sent to plaintiff, and (3) the letter concerned a debt which from the records of the creditor or the nature of the debt, was a non-business debt. The very definition of this class logically involves common questions, such as whether the subject collection letter violates 15 U.S.C. § 1692g. Indeed, the fact that the Court answered that question in the affirmative in its previous ruling (Doc. # 22) further demonstrates that the commonality requirement has been met, as each of the recipients would be entitled to rely on that ruling in an individual suit to

preclude Transworld from relitigating liability.

As was the case in *Savino*, the defining common characteristic of class members here is that they all were sent the same or similar letters. 173 F.R.D. at 152. This standardized conduct weighs heavily in favor of a finding of commonality. *See D'Alauro v. GC Services Limited Partnership*, 168 F.R.D. 451, 456 (E.D.N.Y.1996). The remaining individual issues—identification of class members and determination of damages—are not a bar to class certification. *See In re Visa Check/MasterMoney Antitrust Litig.*, 192 F.R.D. 68 (E.D.N.Y.2000), *citing* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1781, at 8–9 (2d ed.1986).

Defendant does not seriously dispute that commonality is shown on these facts. The Court concludes that the plaintiff has met this prong of Rule 23.

### 2. Typicality of Class Representative Macarz

▌ Rule 23(a)(3) requires that the claims of the class representative be typical of the claims of the class as a whole. Defendant mounts two challenges to the alleged typicality of Mr. Macarz' claims. First, it argues that as an attorney, Mr. Macarz cannot be "typical" of the plaintiffs in the putative class, because he did not pay the debt in question; rather, he immediately identified a possible FDCPA violation on the face of the notice and contacted Attorney Faulkner, to whom he had previously referred consumer law clients for representation. Macarz Dep. at 15, 19 (Def.Ex.1). Defendant further contends that Macarz' lack of actual damages, and the fact that he is not entitled to statutory damages, renders his claims atypical of the class he seeks to represent. Defendant has not cited any authority supporting the proposition that name plaintiffs who are not entitled to actual or statutory damages cannot serve as class representative due to a lack of typicality. The Second Circuit law that defendant does cite is inapposite. In *Pipiles v. Credit Bureau of Lockport*, for example, the Second Circuit simply concluded that the plaintiff was not entitled to actual

damages because she had not demonstrated any injury flowing from the collection notice, and agreed with the district court that no additional damages were warranted because the Bureau did not intend to deceive or harass the plaintiff. 886 F.2d 22, 28 (2d Cir.1989). There has been no such finding here, and even should the Court reach a similar conclusion as to Mr. Macarz, the differences in damages do not so vastly distinguish Mr. Macarz' claim from those of the class as to make his claim atypical for purposes of Rule 23. As noted above, differences in damages are insufficient to preclude class certification.

Similarly, *Emanuel v. American Credit Exchange*, 870 F.2d 805, 808 (2d Cir.1989) does not require that a class representative suffer actual or statutory damages in order for his or her claims to be deemed "typical" for Rule 23 purposes. Instead, *Emanuel*, like *Pipiles*, involved a plaintiff who had not proven actual damages, and a defendant whose conduct "was neither frequent, persistent, nor intentional" and as such was not ordered to pay any additional damages. *Id.* While Mr. Macarz may be unable to prove actual damages, the full relief in this case has yet to be determined, as the fact finder will assess whether defendant's conduct was frequent, persistent or intentional such that an award of statutory damages is warranted. 15 U.S.C. § 1692k(b)(1) (1982). Thus, neither *Pipiles* nor *Emanuel* shed light on whether Mr. Macarz' claims are sufficiently typical of the class.

▌ To the extent defendant bases its typicality challenge on the fact that Mr. Macarz did not pay the disputed debt, its argument is without merit. Defendant cites to a case from the Middle District of Florida which denied class certification, based partly on the fact that the putative name plaintiffs had not paid the unauthorized fee, and therefore lacked standing to sue as they had suffered no actual injury. *Sandlin v. Shapiro & Fishman*, 168 F.R.D. 662, 667 (M.D.Fla. 1996). The Court is not persuaded by the *Sandlin* court's analysis. First, the facts are distinguishable in that the imposition of the fee itself was challenged in *Sandlin*, such that the failure to pay the fee would bear on

the actual injuries suffered; Mr. Macarz' failure to pay the underlying debt that occasioned the collection notice in this case does not have the same relevance to the standing inquiry. *See also Berrios v. Sprint Corp.*, 1998 WL 199842 (E.D.N.Y.) (fact that some class members had not paid bills did not destroy commonality and typicality for class action purposes, because counterclaims to recover on the debts could not be raised as compulsory counterclaims in the litigation).

█ In addition, the Court does not agree that actual damages are a prerequisite for standing to sue under the FDCPA, which has been described as a "strict liability statute" by other courts in this district, *Madonna v. Academy Collection Service Inc.*, 1997 WL 530101 (D.Conn.). A finding of one violation is sufficient to support judgment for the plaintiff, and even if no actual or statutory damages are awarded, the plaintiff "should be awarded costs and attorney's fees; the statute mandates such an award in the case of any successful action." *Emanuel*, 870 F.2d at 809. As *Sandlin* is easily distinguishable, and contradicted by *Emanuel* and other relevant law of this circuit, it is not reason for denying certification on typicality grounds in this case.

█ To the extent defendant's argument regarding the typicality of Mr. Macarz' claim suggests that he may be an inadequate representative of the class due to his vocation and professional relationship with counsel, it will be considered in context of the fourth prong *infra*. *See Amchem v. Windsor*, 521 U.S. 591, 625 n. 20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (noting that adequacy-of-representation requirement tends to merge with typicality and commonality criteria of Rule 23). As to the typicality prong, the Court agrees with plaintiff that Mr. Macarz' claim satisfies this requirement, in that by receiving the same letter, he suffered the same injury as that suffered by other members in the class, and defendant has not identified any aspect of his claim that is atypical or would be subject to unique defenses. *See In re NASDAQ Market-Makers Antitrust Litig.*, 172 F.R.D. 119, 126 ("The proper inquiry is whether other members of the class have the same or similar injury,

whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.")

3. Adequacy of Representation

█ Rule 23(a)(4) requires that the representative plaintiff "fairly and adequately protect the interests of the class." The requirement that the named plaintiffs adequately represent the class is motivated by concerns similar to those driving the commonality and typicality requirements, namely, the efficiency and fairness of class certification. *Marisol A.*, 126 F.3d at 378. To be fair and adequate, representation must meet two basic standards under Rule 23. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another. *In re Joint Eastern and Southern District Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir.1996). While defendant does not directly attack the ability of Mr. Macarz or his counsel to meet these two standards, Transworld insinuates that Mr. Macarz's profession and his previous dealings with his counsel, Ms. Faulkner, along with the arrangements for financing this suit, render him an unfit representative.

█ As an initial matter, defendant has not directed the Court to any authority for the proposition that attorneys cannot serve as representative plaintiffs in FDCPA class actions simply due to their profession. While the argument has some superficial logic, due to the "least sophisticated consumer" standard applicable for FDCPA actions, *see Savino v. Computer Credit*, 164 F.3d 81 (2d Cir. 1998), the Court notes that this standard is an objective measure for interpreting collection notices for determining whether they violate the FDCPA, not a standard that must be met by all successful plaintiffs. Indeed, if a notice is violative as to the prototypical "least sophisticated consumer," it is violative as to all recipients, without a subjective inquiry into the sophistication of those recipients. Further, a law degree is no guarantee of sophistication or familiarity with the complex requirements of consumer law.

Defendant characterizes the combination of plaintiff's profession and his pre-existing business relationship with Attorney Faulkner as "troublesome," and invites the Court to infer the existence of an attorney's fees-driven scheme based on this relationship. The Court declines this invitation. The opinion cited by defendant, *Goldberg v. Transworld Systems, Inc.*, Docket No. 95–CV–992A, is inapposite. There, an attorney who had previously brought numerous FDCPA actions while at UAW Legal Services sought to serve as the representative plaintiff for a class represented by an associate at UAW Legal Services. The court observed that such a situation "may not be the type of case Congress had in mind when it passed" the FDCPA, and that as plaintiff would not have been entitled to attorney's fees had he pursued the claim *pro se*, he should not be allowed to serve as the class representative and obtain attorney's fees for his agency, because "it is clear that Congress did not intend for the FDCPA to be a fee-generating cash cow for lawyers." *Id.* at 2–3.

The Court observes that the Magistrate Judge in *Goldberg* had already disposed of the case on the merits by finding no violation, a conclusion with which the district court agreed. This Court has reached a different conclusion regarding the Transworld notice involved in this case, and has ruled in favor of plaintiff Macarz on the merits of his claim.[1] In contrast to Judge Arcara's finding in *Goldberg*, there is no indication that Mr. Macarz and Attorney Faulkner have collaborated on this case simply to generate fees.[2] In addition, Macarz has not represented clients in FDCPA cases, and his referrals to Attorney Faulkner for that purpose, which to defendant signals some sort of disreputable collusion, just as easily support an inference that he has no expertise or knowledge in the area of consumer law. The Court will not decline class certification simply because the plaintiff and his counsel have had professional dealings in the past, without any other evidence suggesting some improper purpose for the suit.

Defendant also challenges Mr. Macarz' adequacy as a representative of the class based on his financial arrangements for the payment of costs in this case. In Mr. Macarz' deposition, he stated that his attorneys were advancing the costs of the litigation, and that if his case was ultimately unsuccessful, he would be responsible for his "pro-rata share." Macarz Dep. at 20, Def. Ex. 1. While acknowledging that the 1995 revisions to Connecticut's ethical rules permit attorneys to advance costs, the repayment of which may be contingent on the outcome of the case, the defendant argues that the fee and costs arrangement in this case still creates an "obvious potential conflict of interest" warranting denial of certification. In the Court's view, the potential conflict of interest here does not have the proportions defendant assigns it, and therefore disagrees with defendant's conclusion regarding the adequacy of Mr. Macarz status as a representative.

Courts in this district have observed that when considering a challenge to the adequacy of a class representative based on the payment arrangement for costs, "the only relevant inquiry is plaintiff's willingness to pay his pro rata share of expenses." *Rivera v. Fair Chevrolet Geo Partnership*, 165 F.R.D. 361, 365 (D.Conn.1996) (adequacy of name plaintiff in Truth in Lending Act class).

---

1. Defendant claims that *Goldberg* involved the same collection notice as the one at issue in this case. Def.Mem. at 4. Magistrate Judge Scott's Report and Recommendation does indicate that at least a portion of the "fine print" disclosure on the notice received by Mr. Macarz was also at issue in that case. *Goldberg v. Transworld Systems*, Docket No. 95–cv–992A, March 31, 1997, p. 2 (quoting language from challenged notice that "all portions of this claim will be assumed valid unless disputed within thirty days of receiving this notice."). It is not clear whether the primary text of the notice was identical, however, and in any event, plaintiff here raises different legal challenges to different portions of the letter. The Second Circuit's affirmance in *Goldberg v. Transworld*, 164 F.3d 617 (2d Cir.1998), therefore does not alter this Court's previous conclusion regarding the notice's legality.

2. In fact, Mr. Macarz' deposition testimony indicates that he was experiencing real financial troubles at the time he received the collection notice, in that he acknowledged he had been the defendant in a collection action and had sought bankruptcy protection.

In *Rivera*, Judge Dorsey quoted approvingly from a Seventh Circuit decision, *Rand v. Monsanto*, 926 F.2d 596 (7th Cir.1991), in which the Court of Appeals reversed a district court's finding of inadequacy based on the plaintiff's failure to front the costs of the litigation in a securities case. This Court also finds the rationale of *Rand* persuasive, and it merits quoting at length:

> Class actions assemble small claims—usually too small to be worth litigating separately, but repaying the effort in the aggregate. A representative plaintiff gains nothing from the collective proceeding. Under the district court's rationale, however, he could well lose, because filing the class suit would expose him to the entire costs of the case. The class as a whole might be willing to pay the costs. Lawyers, who unlike the representative plaintiff receive compensation reflecting any benefits conferred on the class as a whole, also may be willing to underwrite the costs. Lawyers can spread risk not only across the partners of the firms but also across cases. One loss does not mean disaster if the firms have portfolios of actions, as they will. But the representative cannot diversify in this way and cannot collect a reward for bearing exceptional risk in a single case. The very feature that makes class treatment appropriate—small individual stakes and large aggregate ones—ensures that the representative will be unwilling to vouch for the entire costs.

*Rand*, 926 F.2d at 599.[3] Such reasoning is equally applicable to a FDCPA action, where the recoverable damages are capped by a statutory maximum.

Contrary to defendant's assertion, it does appear that the plaintiff in this case is willing to pay his pro rata share of the costs of this litigation. In his deposition, he testified that his attorneys were advancing the costs of the litigation, as allowed under Rule 1.8 of the Rules of Professional Conduct, and that he was "responsible for whatever [his] pro-rata share may be." Def.Mem. at 5. He further clarified that he believed his pro-rata share would amount to "some of the filing costs, maybe some deposition fees," but that he did not know the potential size of the class such that his precise share could be calculated. *Id.* As plaintiff had not seen the defendant's discovery responses at the time of his deposition, his ignorance of the amount for which he may be responsible is understandable, and does not allow an inference that he is somehow an unsuitable representative. The arrangement for payment of fees and expenses disclosed in the plaintiff's deposition fits within the reasoning of *Rand*, and is consistent with the ethical rules of this state, and the Court therefore concludes that it is no bar to finding Mr. Macarz an adequate class representative.

Defendants have cited no case law imposing a requirement that the name plaintiff shoulder all the expenses and costs of a class action, nor does the Court believe that such a requirement would be justified in this case, given the nature of a class action and the public policy behind the FDCPA. The one case cited by defendant, *Ruland v. General Electric Co.*, 94 F.R.D. 164, 166 (D.Conn. 1982), is not to the contrary. In that case, Judge Burns denied class certification, noting that none of the name plaintiffs had "a realistic conception of the likely costs of what promises to be a protracted and expensive

---

3. As noted above, *Rand* came to the Court's attention through a citation in *Rivera*, a case from the District of Connecticut. Plaintiff also cites to *Rand* in his motion for class certification, but does not mention *Rivera*. In fact, plaintiff's brief is rife with citations to Seventh Circuit and Northern District of Illinois decisions, but contains only isolated references to Second Circuit law. The Court finds this omission notable, since a district court in this circuit has chastised one of the firms representing the plaintiff, Edelman & Combs, for precisely the same conduct. "Until counsel thoroughly researches and cites to controlling New York state and Second Circuit

law and accurately provides this Court with controlling case law, this court cannot find Edelman & Combs competent to act as class counsel in this or any other case in this jurisdiction." *Berrios v. Sprint Corp.*, 1998 WL 199842, *18 (E.D.N.Y.) (Sifton, Chief J.). Defendant here does not challenge the adequacy of class counsel, and so the Court does not find plaintiff's failure to reference appropriate case law sufficient reason to deny class certification. This Court will not be so lenient, however, if motions for class certification similarly bereft of this jurisdiction's law are presented in the future.

lawsuit," although they had worked out a contingent fee arrangement with counsel that left the name plaintiffs responsible for their "fair share" of litigation costs. 94 F.R.D. at 166. Class certification was not denied on this basis, however, but because the record was insufficient "on which to premise a ruling either that these are adequate representatives or that they are not." 94 F.R.D. at 167. The facts of *Ruland* are dissimilar to the present case, and further, *Ruland* was decided before the adoption of the Rules of Professional Conduct in 1986, which allow attorneys to advance the costs of litigation on contingency.

Mr. Macarz appears to be a fair and adequate representative of the class, notwithstanding his profession and his business relationship with one of his attorneys in this case. The fee arrangement between the plaintiff and his counsel does not alter that conclusion. Defendant's objections to class certification on the grounds of inadequate representation are therefore overruled.

## B. Rule 23(b)

Having found that the four prerequisites of Rule 23(a) have been satisfied, the Court turns now to the question of whether the putative class falls within any one of the three categories of Rule 23(b). Plaintiff contends that his proposed class meets the criteria Rule 23(b)(3), which authorizes a class action where the court finds that common questions of law and fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. *Predominance*

■■■ The Court finds that the predominance requirement is easily met in this case. All class members' claims arise from a common nucleus of facts, or more precisely, a common document. In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class. Indeed, "[w]hen determining whether common questions predominate courts 'focus on the liability issue

... and if the liability issue is common to the class, common questions are held to predominate over individual questions.'" *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y.1987) (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981)). The Supreme Court has also noted that "[t]his 'Predominance requirement' is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2250, 138 L.Ed.2d 689 (1997). While damage amounts may vary, the claims of the class present the same legal theories based on identical facts such that common questions clearly predominate. Defendant does not seriously challenge the predominance element of 23(b)(3), and the Court finds that it has been met here.

### 2. Superiority of Class Action

■■■ As the 23(a) prerequisites have been met, and common questions predominate, certification as a class action is appropriate subject to a finding that the class action is the superior method for fair and efficient adjudication of the controversy. Rule 23(b)(3) lists several factors pertinent to this determination:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Transworld argues that a class action is not superior in this case, because plaintiff has the same remedies available to him in an individual case, and "[p]ursuing class relief will only serve to delay the day when he can obtain relief himself," while perhaps subjecting himself to substantial financial costs should the litigation ultimately prove unsuccessful. Def.Mem. at 7. Defendant also feigns concern for the putative class members who would receive less than $50 were

this action to proceed as a class, but would have the opportunity to seek up to $1,000 in statutory damages were they to bring individual actions.

The Court rejects both these arguments. First, under Rule 23(c)(2)(A), members of class actions maintained under 23(b)(3) who determine that their interests are better served by an individual action, and provide timely notice of this election to the Court, will be excluded from the class. Fed. R.Civ.P. 23(c)(2)(A). This "opt out" provision is designed to ensure that even in a class action that meets all the prerequisites of Rule 23, "the individual interest is respected." Advisory Committee Notes to the 1966 Amendments.

Further, the notion that individual plaintiffs may recover higher damages if they were to pursue their own claims is implicit in the very idea of a class action, and is part of the balance that is struck in Rule 23 of providing a vehicle for the aggregation of small claims while still seeking to protect those individual claimants. The possibility that putative class members would be entitled to greater recovery should they pursue claims on their own arises in every class action, but it not grounds for denying class certification, if the other criteria are met. As the Seventh Circuit noted:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case. These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338 (7th Cir.1997).

The reasoning of *Mace* is persuasive, and based on that reasoning, the Court cannot accept the ultimate conclusion urged by the defendant—that at least $15,000 individual FDCPA actions would somehow provide for greater fairness and efficiency than the streamlined procedure of a class action. Defendant would no doubt benefit from such result, as the vast majority, if not all, of those potential plaintiffs would fail to pursue what this Court has already determined are meritorious claims. But defendant's desire to limit its exposure in damages cannot be a criteria for assessing the appropriateness of a class action. Rather, the Court must keep in mind the "private attorney general" enforcement mechanism chosen by Congress in enacting the FDCPA. *See Phillips v. Amana Collection Services*, 1992 WL 227839 (W.D.N.Y.). If only those recipients of the letter with significant damages, and thus incentive to sue, brought actions to challenge its legality, the FDCPA would not have the deterrent and curative effect of eliminating abusive collection practices intended by Congress. *Id.* Although class members may recover smaller damages amounts than would have been the case in individual actions, the Court finds that the class action vehicle is nonetheless superior, given the remote likelihood that such individual actions actually would be brought.

Defendant's quarrel on the issue of superiority is really with plaintiff's counsel, whom defendant contends are engaging in "improper claim-splitting and piecemeal litigation" such that class certification should be denied. In support, defendant points to a motion to compel discovery filed by counsel in a companion case brought by Mary Macarz against Transworld in which plaintiff's counsel sought information regarding individualized instructions from a particular creditor. To defendant, this demonstrates hypocrisy on the part of plaintiff's counsel in that "[i]n individual FDCPA claims over the TSI letters, individual, particularized issues predominate and justify discovery fishing expeditions. In class actions, counsel asserts, common issues predominate." Def.Mem. at

9. The Court first notes that looking to the formulation of discovery requests in a separate case in order to discern some sort of underlying strategy on the part of plaintiff's counsel is, at the least, an unorthodox means of opposing class certification. Given the broad scope of discovery under our Federal Rules, the terminology employed in such requests is unlikely to have much relevance to the questions presented in a motion for class certification. Further, characterizing counsel's discovery requests as a "fishing expedition" is not entirely accurate, since the docket sheet indicates that plaintiff's motion to compel was granted by Magistrate Garfinkel. *See* Docket No. 3:97cv00824(JBA), Doc. # 9. Finally, as plaintiff points out, information regarding Transworld's instructions from individual creditors bears on defendant's intent, a component of damages under the Act. Seeking such information in an individual case is not inconsistent with pursuing class certification, as similar factors may go into a determination of individual damages for the class members.

Defendant's reference to a number of other suits filed by the same counsel against Transworld is similarly unpersuasive. To defendant, again, these suits "indicate [counsel's] motive is to bring multiple suits to generate fees." *See* Def.Ex. 6 (*Delgadillo v. Transworld*, Docket No. 98 C 6736, N.D.Ill.); Def.Ex. 7 (*Rosenberg v. Transworld*, Docket No. 98 C 5988, N.D.Ill.); Def.Supp.Resp. (*Frys v. Transworld*, Docket No. 99 C 0435, N.D.Ill.). At least two of the suits referenced appear to involve a different communication from Transworld, and allege different violations of the FDCPA. *See Delgadillo*, Exhibit A (Def.Ex.6); *Frys*, Exhibit A (Def.Supp.Resp.). The Mary Macarz action was reported settled at the end of 1997, and the Court cannot discern from the documents submitted by defendant whether the claims in that case were similar to those of Mr. Macarz. The *Rosenberg* action does appear to involve the same dunning notice that was received by Mr. Macarz, but it was filed after this Court had issued its summary judgment ruling finding the letter violated the FDCPA. While defendant may wish to challenge this Court's ruling on appeal, by choosing to continue to utilize the same collection letter it

leaves itself open to further lawsuits premised on a "continuing violations" theory. *See Mace*, 109 F.3d at 344 (Rejecting same argument, because "if a debt collector is sued in one state, but continues to violate the statute in another, it ought to be possible to challenge such continuing violations.")

Transworld also argues that a statewide class is improper, as allowing repeated statewide class actions for violation of the same letter would render the $500,000 per class action damages cap in the FDCPA meaningless. Defendant would have the Court read an implied limitation on statewide class actions into the FDCPA $500,000 damages cap, such that plaintiff's attempt to certify a class solely of Connecticut residents would constitute "improper claim-splitting." Defendant's argument has been considered, and rejected, in a number of cases. First, the Seventh Circuit in *Mace* concluded that the language of the statute did not support such an interpretation. While the Truth in Lending Act damages cap applied to class actions as well as to a "series of class actions ... arising out of the same failure to comply by the same creditor," the Seventh Circuit noted that the same language was "conspicuously absent from the FDCPA." 109 F.3d at 342. The *Mace* court identified several problems arising from requiring nationwide class certification, ranging from the short statute of limitations for FDCPA actions (one year) to the de minimis recovery for class members that would result. *Id.* The Seventh Circuit reserved decision on the propriety of a nation-wide class in the case of "multiple serial class actions to recover for the same misconduct," because the facts before the court did not present such a situation.

Similarly, while the defendant points to four other actions brought by plaintiff's counsel against Transworld, it is not at all clear that "the same misconduct" is involved; in fact, at least two of the cases appear to involve a separate notice, and at least one of the cases has settled. Further, plaintiff's counsel has represented to the Court that the parties to the cases pending in the Northern District of Illinois (three of the cases referenced by defendant) have entered into an Agreed Order staying all litigation pending

determination of a common legal issue in one matter (a legal issue not presented in this case). Plaintiff also points out that the three actions pending in the Northern District of Illinois were also brought against the individual creditors and involve the agreements between these creditors and Transworld, thus requiring separate suits.

The Court therefore concludes that these facts do not present the "multiple serial class action" scenario that *might* have prompted the Seventh Circuit to address a nationwide class requirement, and accordingly refuses to accept defendant's invitation to graft such a requirement onto the FDCPA.

The Connecticut class meets the requirement of Rule 23(a) and (b), and the Court will not decline certification simply because plaintiff seeks to limit the class to a specific geographic area. Such a class will be more easily managed by this Court, and to the extent testimony of individuals is needed in the damages phase, concentrating the litigation in this District will assist Connecticut residents who might otherwise be unwilling to travel to distant fora for a relatively small sum. *See* Fed.R.Civ.P. 23(b)(3)(C) and (D); *see also Mace,* 109 F.3d at 341 ("the class requirements found in the Federal Rules of Civil Procedure encourage rather specific and limited classes.") Class certification is therefore the efficient and appropriate means of resolving this litigation.

### 3. Identification of Class Members

██ Defendant's final sally against class certification is the impossibility of definite identification of class members. The FDCPA applies only to consumer debts, and although the FDCPA disclosures appear on all notices Transworld sends, it apparently collects both consumer and business debts, and does not distinguish between the two in its internal record-keeping. Due to its inability to separate out the FDCPA-protected consumer debtors from non-protected business debts, defendant argues that class certification is inappropriate. According to an affidavit submitted by George Macauley, President of Transworld, TSI does not distinguish between non-consumer and consumer debts, and "[t]here are no records or infor-

mation available to TSI to ascertain whether debts are consumer debts or commercial debts." Macauley Aff. ¶ 7 (Def.Ex.5). Accordingly, defendant posits, determining whether each debt was a commercial or consumer debt would be an "overwhelming task" necessitating the reassembly of vast quantities of data, design of a new computer program, and thousands of hours of work.

The defendant's protestations of impossibility do not alter the Court's conclusion that class certification is appropriate here. First, several courts have rejected the identical argument, and concluded that difficulties in differentiating consumer and commercial debts does not serve as a bar to class certification, if all the other prerequisites of Rule 23 are met. *See Wilborn v. Dun & Bradstreet,* 180 F.R.D. 347 (N.D.Ill.1998) ("The need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class actions (sic). If that need alone precluded certification, there would be no class actions under the FDCPA."); *In re CBC Companies,* 181 F.R.D. 380, 385 (N.D.Ill.1998) ("Under CBC's reasoning, it would be impossible to bring a FDCPA class action if there was a chance a possible class member used a credit card for a business purpose. Only those classes whose claims revolve around debts which on their face could definitively be associated with personal purposes could bring a class action under the FDCPA. Such a finding would be contrary to the clear remedial goals of the FDCPA.").

Should a debt collection company as large and as sophisticated as Transworld be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted. Given the number of claims that have been pursued against Transworld and the number of classes that have been certified, defendant's claim that their records are not up to the task of differentiating the debts it collects rings hollow. In addition, any disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case. Defendant's objection to class

certification on grounds that the class cannot be readily identified is overruled.

## III. CONCLUSION

Because plaintiff has met the requirements of Rule 23, his Motion for Class Certification [doc. # 49] is GRANTED. The class is certified and described as: a) all Connecticut residents b) who were sent a collection letter by Transworld Systems c) where the letter was in the form received by Mr. Macarz, attached to this opinion as Exhibit A, d) concerned a non-business debt, e) was sent on or after a year prior to the date of filing of this action, and f) was not returned by the post office.

IT IS SO ORDERED.